**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| SENTINEL MANAGEMENT GROUP, INC., | ) | |
| | ) | U.S.D.C. Case No. 12-CV-06388 |
| | ) | |
| PENSON GHCO n/k/a PENSON FUTURE and | ) | U.S.B.C. Case No. 07-B-14987 |
| PENSON FINANCIAL FUTURES, INC., *et al.*,[1] | ) | |
| | ) | The Hon. Amy J. St. Eve |
| Appellants, | ) | |
| | ) | |
| v. | ) | (Appeal from an order of the United |
| | ) | States Bankruptcy Court of the |
| FREDERICK J. GREDE, not individually but as | ) | Northern District of Illinois, Case |
| Liquidation Trustee of the Sentinel Liquidation | ) | 07-14987, Honorable Jacqueline Cox |
| Trust, | ) | Presiding) |
| | ) | |
| Appellee. | ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

In this appeal, the Appellants seek to overturn the Bankruptcy Court's approval of Appellee and Trustee Frederick J. Grede's ("Grede" or "Trustee") allocation of certain settlement proceeds and related litigation expenses among two creditor groups. Specifically, Appellants seek to overturn the Bankruptcy Court's June 20, 2012 Order Approving Allocation of Settlement Proceeds. For the following reasons, the Court affirms the Bankruptcy Court's

---

[1] In addition to Penson GHCO n/k/a Penson Futures and Penson Financial Futures, Inc. the appellants include IFX Markets, Inc., IPGL, Ltd., ABN AMRO Clearing Chicago LLC, Country Hedging, Inc., Crossland, LLC, Farr Financial Inc., Velocity Futures, LLC, FCStone LLC, Cadent Financial Services et al., Rand Financial Services, Inc., TradeMaven Clearing LLC, UBS Securities, LLC and American National Trading Corp., et al. (collectively, the "Seg 1 Customers")

Order.

## BACKGROUND

On August 17, 2007, Sentinel Management Group ("Sentinel"), a futures commission merchant and investment advisor, filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. (R. 26, Resp. at 3-4; R. 24, App. Br. at 4). Earlier that day, Sentinel sold most of the securities it held on behalf of the Seg 1 Customers[2] to Citadel Equity Fund and Citadel Limited Partnership for approximately $318 million (the "Citadel Proceeds"). (App. Br. at 4.) On August 28, 2007 the Bankruptcy Court approved the appointment of Frederick Grede to serve as Sentinel's Chapter 11 trustee. (Resp. at 4.)

Grede and the Official Committee of Unsecured Creditors proposed a plan of liquidation (the "Plan"), which the Bankruptcy Court confirmed on December 15, 2008. (*Id.*, App. Br. at 5.) The Plan created the Liquidation Trust to pursue the claims and causes of action belonging to Sentinel's bankruptcy estate (the "Estate Claims") and to make distributions to creditors. (Resp. at 4; App. Br. at 5.) The Plan also created a distinct tranche of the Liquidation Trust ("Tranche P") for personal causes of action that Sentinel customers had against third parties (the "Non-Estate Claims"). (Resp. at 4; App. Br. at 5-6.) The Plan and the agreement creating the Liquidation Trust (the "Trust Agreement") entitled these assigning customers to proceeds of any Non-Estate Claims, distributed to them on a *pro rata* basis. (Resp. at 4.)

The Plan also provided that Sentinel's former customers and other general secured creditors would receive proceeds from Sentinel's liquidation of its estate assets and litigation.

---

[2] "Seg 1 Customers" refers to a group of Sentinel customer accounts that included the Appellants. (Resp. at 3.)

(App. Br. at 5.) Under the Plan, customers who had received a distribution of the Citadel Proceeds, such as Seg 1 Customers, would not receive any additional distributions until those customers and creditors who did not receive such a distribution ("NonCitadel Beneficiary Customers") received a percentage distribution equal to the distribution that the Seg 1 Customers and others previously had received, including the distribution of the Citadel Proceeds. (App. Br. at 5.) "Virtually all of the [] NonCitadel Beneficiary Customers assigned their Non-estate Claims to the Trustee to be held and pursued by the Litigation Trust on behalf of [the former Sentinel customers who cast a ballot to assign their Non-Estate claims to the Liquidation Trust for prosecution]." (App. Br. at 6.) The Trustee now serves as the trustee for this Liquidation Trust, which includes the claims assigned to Tranche-P. (App. Br. at 5.)

According to the Liquidation Trust Agreement, in the event the Trustee compromises or otherwise settles both an Estate Claim and a Non-Estate claim against the same defendant or group of defendants, the Liquidation Trustee "'in consultation with the Liquidation Trust Committee, in his good faith judgment based upon the merits of the respective claims, shall allocate a portion of such proceeds to Tranche-P on account of the Tranche-P Electors' Non-Estate Claims' and must seek Court approval of that allocation." (App. Br. at 6 (quoting Trust Agreement § 8.3); Resp. at 5.) According to Appellants, "[e]very dollar of recoveries allocated to Tranche P and every dollar of expenses paid by the Liquidation Trust and not reimbursed to the Liquidation Trust from Tranche P's share of recoveries reduces the Percentage Recovery received by the NonCitadel Beneficiary Customers and non-customer creditors from the Liquidation Trust on account of their allowed claims, thereby reducing the Sec 1 Customers potential recovery from the Liquidation Trust and increasing their potential liability in Seg 1

3

Cases." (App. Br. at 6-7.)

In August 2011, the Trustee settled certain Estate Claims and Non-Estate Claims for $41,000,000, of which the Trustee received approximately $39,000,000 for distribution in accordance with the terms of the Plan and Trust Agreement ("Settlement Proceeds"). (App. Br. at 7.) On November 15, 2011, the Trustee filed a motion seeking the Bankruptcy Court's approval of his allocation of the Settlement Proceeds ("Allocation Motion"). (Resp. at 7.) In the Allocation Motion, the Trustee sought to allocate 60% of the Settlement Proceeds to the estate, and 40% to Tranche P. (App. Br. at 7.) He also estimated that roughly $10 million in expenses should be apportioned to Tranche P based on the expenses that the Liquidation Trust had paid pursuing Non-Estate Claims on behalf of Tranche P. (*Id*.; Resp. at 7.) In the Allocation Motion he also stated that he would reserve $2.5 million for future Tranche P litigation costs and expenses. (App. Br. at 7; Resp. at 7.) Appellants believe that this allocation of expenses was insufficient as the Trustee "failed to properly allocate all expenses incurred by the Liquidation Trust pursuing Non-Estate Claims." (App. Br. at 7.) Appellants, therefore, objected to the approval of the Allocation Motion. The Bankruptcy Court, after considering the briefs of the parties and oral argument, overruled Appellants' objections and granted the Allocation Motion. (Resp. at 7.)

## LEGAL STANDARD

Federal district courts have mandatory exclusive jurisdiction over appeals from final judgments, orders, and decrees of bankruptcy judges. *See* 28 U.S.C. § 158(a). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility

4

of the witnesses." Fed. R. Bankr. P. 8013; *In re Berman*, 629 F.3d 761, 766 (7th Cir. 2011). Accordingly, the Court reviews the Bankruptcy Court's findings of fact for clear error and its legal conclusions de novo. *See Stern v. Marshall*, 131 S. Ct. 2594, 2627, 180 L. Ed. 2d 475 (2011); *In re Berman*, 629 F.3d at 766. A bankruptcy court's factual finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Kovacs v. U.S.*, 614 F.3d 666, 672 (7th Cir. 2010) (quoting *In re Smith*, 582 F.3d 767, 777 (7th Cir. 2009)). "Where the trial court correctly states the law, its determination of whether the facts met the legal standard will be disturbed only if it is clearly erroneous." *In re Berman*, 629 F.3d at 766 (citing *Pinkston v. Madry*, 440 F.3d 879, 888 (7th Cir. 2006)). In general, under the clearly erroneous standard, if there are two permissible views of the facts, a court's choice between them cannot be clearly erroneous. *See Dexia Credit Local v. Rogan*, 629 F.3d 612, 628 (7th Cir. 2010).

Additionally, the Liquidation Trust provides that Delaware Law is the governing substantive law. (App. Br. at 8.)

## ANALYSIS

Appellants present two issues on appeal: (1) whether the Bankruptcy Court erred when it entered the Order approving the allocation of a portion of the Settlement Proceeds to Tranche P because the Order fails to address the Trustee's payment of expenses to the extent that the expenses benefitted Tranche P; and (2) whether the Bankruptcy Court erred when it entered the Order without first requiring the Trustee to fairly account for all expenses paid by the Liquidation Trust for the benefit of Tranche P. (App. Br. at 1.) Specifically, Appellants take issue with the Trustee's alleged failure to allocate expenses for two categories of expenses that

5

benefitted Tranche P: (1) fees and expenses charged by the Trustee to the Liquidation Trust for his work, and (2) fees and expenses incurred by professionals retained by the Trustee for work done prior to January 2009, none of which is allocated to Tranche P, notwithstanding the Trustee's admission that such work benefitted Tranche P. (App. Br. at 3.)

Before considering the issues on appeal, the Court addresses the parties' divergent views on the applicable standard of review for this appeal.

## I.     Standard of Review

Appellants claim that "the issues presented on appeal are questions of law which are entitled to a *de novo* review by this Court." (App. Br. at 1; *see also* R. 30, Reply at 4-7.) The Trustee argues that "the only issue on review is purely factual" and that the "Bankruptcy Court's determination that the Trustee acted within his discretion should not be disturbed unless the Trustee's decision was arbitrary and capricious - that is, 'downright unreasonable.'" (Resp. at 1, 9.) Both parties' arguments, however, are flawed.

First, in their initial brief, Appellants do not present any questions of law for the Court to decide.[3] Rather, Appellants ask the Court to find (1) that the Bankruptcy Court should have

---

[3] In their Reply Brief Appellants attempt to argue that *de novo* review applies because the "Bankruptcy Court either misconstrued or misapplied" the provisions of the Trust Agreement and applicable trust law which require the Trustee to account for and apportion the income and expenses associated with the Tranche P Non-Estate Claims. (Reply at 4.) Not only do they not raise this argument in their initial brief, which focuses entirely on the failings of the Trustee rather than any legal failure by the Bankruptcy Court itself, but they have provided no citations to the Trust Agreement of applicable trust law that contain such a requirement. For the first time in their Reply Brief, Appellants also claim that the Bankruptcy Court "committed an additional legal error by applying a deferential, discretionary standard to the Trustee's failure to apportion the unallocated expenses to Tranche P," claiming that the Bankruptcy Court should have applied a *de novo* standard. (*Id*. at 5.) Appellants, therefore, waived both of these arguments because they did not raise these alleged legal errors in their opening brief. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012) ("arguments raised for the first time in a reply

6

addressed expenses in its Order, which does not attack the legal sufficiency of the Bankruptcy Court's conclusions or analysis; and (2) that the Bankruptcy Court's factual finding that the Trustee acted equitably and fairly accounted for the expenses attributable to Tranche P when allocated the Settlement Proceeds. The Court, therefore, reviews the Bankruptcy Court's findings under the clearly erroneous standard. *See, e.g., Hower v. Molding Systems Eng.g. Corp.*, 445 F.3d 935, 938 (7th Cir. 2006) ("Good faith is a factual finding and reviewed for clear error.") (citing *In re Smith*, 286 F.3d 461, 464 (7th Cir. 2002)).

Second, the Trustee's argument conflates the standard of review governing the appeal, namely how this Court should review the decisions made by the Bankruptcy Court, with the evidentiary standard that it believes the Bankruptcy Court should have applied when evaluating the Trustee's conduct. The Trustee is correct, however, that the Bankruptcy Court should have applied a deferential standard to the Trustee's apportionment of the expenses. *See, e.g., U.S. v. Segal* 432 F.3d 767, 777 (7th Cir. 2005); *Exbom v. Central States, S.E. Areas Health & Welfare Fund*, 900 F2d 1138 (7th Cir. 1990); *Chojnacki v. Georgia-Pacific Corp.*, 108 F.3d 810, 816 (7th Cir. 1997); *see also Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111, 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989) ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary power.").

Appellants misguidedly argue that the deferential "arbitrary and capricious" standard should not apply to the Trustee's decisions here because such a standard only applies when a Trustee utilizes his discretion and the Trustee here "abdicated his discretion." (Reply at 5.) To support this proposition, Appellants state that "[the Trustee] made no attempt whatsover to

---

brief are waived").

7

apportion and assess the two categories of expenses, and admitted as much." (*Id*.) Appellants concede, however, that the Trustee did apportion certain expenses in other categories. (*Id*. at 6.) Moreover, during oral argument before the Bankruptcy Court, the Appellants' counsel explained that their argument was not that the Trustee did not make any allocations of expenses, but rather that "some expenses" were "not fairly allocated." (Bky. Dkt. 1690 at 13, ln 1-6.) This is not a case, therefore, where a Trustee has failed to act or exercise his discretion. Rather, as explained further below, the Trustee utilized his discretion regarding which expenses to specifically allocate to Tranche P, and which expenses, such as the expenses at issue, to account for instead when allocating the Settlement Proceeds, as they relate to the litigation of both Estate and Non-Estate Claims.

Appellants also argue that the Bankruptcy Court should not have given the Trustee's decision deferential treatment because the Trust Agreement restrains the Trustee's discretion. (Reply at 8.) In addition to not raising any such argument in its initial brief, this argument fails because Appellants do not cite to any provision of the Trust Agreement with a restraint relating to the Trustee's allocation of expenses. Instead, Appellant attempts to argue that the Trust Agreement's requirement that the Trustee apportion litigation *proceeds* in good faith is a restraint on his discretion. (*Id*. (citing Trust Agreement § 8.3).) Not only does this provision not discuss allocation of expenses, but the Court finds no reason to construe it as a restraint on the Trustee, who, as noted by Appellants, inherently has a duty as a fiduciary to act in good faith. (*See, e.g.,* App. Br. at 8.) Moreover, even if the Trust Agreement does restrain the Trustee by requiring that he act with good faith, and a standard of "reasonableness" applies, as Appellants argue, the Court's analysis does not change. (*Id*.) The Court, therefore, will determine whether

8

the Bankruptcy Court clearly erred when it evaluated the Trustee's decisions with deference and, after concluding that he acted equitably, granted the Allocation Motion.

## II. Issues on Appeal

As discussed above, the Appellants' arguments, which substantially mirror those it made to the Bankruptcy Court, attempt to undercut the decisions made by the Trustee rather than articulate any reason why the Bankruptcy Court clearly erred in its decision. Indeed, Appellants misguidedly focus their entire argument on a presumption that the Trustee had to specifically allocate the expenses at issue for his allocation of the Settlement Proceeds to be fair and equitable. Appellants, therefore, argue that the Court should overturn the Bankruptcy Court's conclusions because it did not accept this presumption. Notably, the Appellants offer this presumption, without citation, simply stating: "The proper allocation of proceeds from litigation assumes the fair allocation of the expenses incurred pursuing the proceeds." (App. Br. at 7; *see also* App. Br. at 10; Bky. Dkt. 1675 at 10.) Moreover, Appellants offer no evidence that this presumption is true, supported by case law, or required by the Trust Agreement, which would govern the duties of the Trustee.

Instead, Appellants, citing to general principles governing a trustee's fiduciary duties, somehow create an obligation to specifically allocate expenses of every type, and conclude that any allocation of proceeds without such an explicit accounting must be inequitable. Appellants cite, for example, to a Trustee's fiduciary duties to act with fidelity and good faith, as well as his duty under the Trust Agreement to utilize "good faith judgment." (App. Br. at 6-7 (citing *Cargill, Inc. v. JWH Special Circumstance, LLC*, 959 A.2d 1096, 1112 (Del. Ch. 2008); *In re Fruehauf Trailer Corp.*, 369 B.R. 817, 829-30 (Bankr. D. Del. 2007)).) Specifically, under the

9

standard applicable to fiduciary trustees: "[A] Trustee's duty to his trust and to his beneficiaries in administering the trust is to exercise the care and skill a man of ordinary prudence would exercise in dealing with his own property in the light of the situation existing at the time." *In re Freuhauf*, 369 B.R. at 829-30 (citing *Wilmington Trust Co. v. Coulter*, 200 A.2d 441, 448 (Del. 1964)). Additionally, "[a] trustee is also under a duty to deal fairly with the beneficiaries and not to place his personal interests . . . ahead of the interests of the Trust and its other beneficiaries." *Id*. at 830. Notably, under Delaware trust law, "'good faith' encompasses both honesty in fact and the observance of reasonable standards of fair dealing." *Vincent v. Baize*, No. 3432-VCN, 2011 WL 4695622, at *1 n. 4 (Del. Ch. Sept. 30, 2011) (citing 12 Del. C. § 3580; *Paradee v. Paradee*, No. 4988-VCL, 2010 WL 3959604, at *11 (Del. Ch. Oct. 5, 2010)). Appellants, however, do not argue that the Trustee acted dishonestly or exercised a level of care below that of a man of ordinary prudence. They also make no allegations of fraud, or that the Trustee abused his discretion or acted in bad faith. Appellants instead conclude that equity and fairness require the specific expense allocation they sought in their objections to the Bankruptcy Court.

Furthermore, Appellants do not dispute that their "narrow focus on only the expense side fails to recognize that the Trustee made the expense allocations as part of an overall allocation that included what the Trustee believes to have been a very generous allocation of settlement proceeds to the estate, which would more than offset the incremental additional expenses the objectors argue should have been attributed to the prosecution of assigned creditor claims." (Bky. Dkt. 1682 at 1.) Specifically, according to the Trustee, "[he] did not allocate expenses in a vacuum, but rather did so as part of an overall allocation that took into account all revenues and expenses; had the Trustee been required to allocate more expenses to Tranche-P (such as

10

portions of his compensation), he very likely also would have allocated more proceeds to Tranche-P based upon his good faith judgment." (Resp. at 16; *see also* Bky. Dkt. 1682 at 5.) Consequently, "[in his] determination, the current allocations [] already capture and reasonably account for the expense of prosecuting assigned customer claims." (Bky. Dkt. 1682 at 3.)

Notably, although Appellants seek an allocation of the Trustee's time, which totaled approximately $3.5 million, the expenses for his time included administrative tasks and other various tasks besides litigation. (Resp. at 12-13 ("[T]he Trustee spends his time administering and investing the Liquidation Trust's assets, reviewing financial reports and tax returns, reviewing invoices from processionals and other vendors, processing accounts payable, corresponding with Liquidation Trust beneficiaries, communicating with the Liquidation Trust Committee, processing distributions to creditors, and overseeing all aspects of the Sentinel liquidation.").) Indeed, his tasks also related to his duties to oversee the Liquidation Trust as a whole, including any litigation relating to Tranche P or the rest of the Liquidation Trust. No simple, itemized accounting was possible. Appellants even agreed during oral argument in front of the Bankruptcy Judge that they could not offer any insight into what allocation of expenses would be appropriate, yet specifically stated that they were not seeking an accounting. (Bky. Dkt. 1690 at 17, ln 6-10, 20-24.) As a result, the Trustee had to embark on an "allocation of settlement proceeds and his apportionment of expenses incurred pursuing Non-Estate Claims" that was "more of an art than a science." (Resp. at 11.) As a safeguard, he also allocated an additional $2.5 million for future litigation expenses. (App. Br. at 7.)

The Bankruptcy Court accepted the Trustee's explanations and allocations, after reviewing the briefs and hearing oral argument. Specifically, when ruling in open court after

11

oral argument, the Bankruptcy Judge explained that she was "convinced that the trustee has acted equitably" and that she "[did]n't see any reason for the trustee to be biased towards the nondebtor claimants." (Bky. Dkt. 1690 at 16, ln 5-14.) The Bankruptcy Court's Order stated that it found that the Trustee utilized his "good faith judgment," in accordance with the Trust Agreement, "following extensive consultation with counsel," based on various factors, such as the merits of the claims, and acted in the "best interests of the Estate, the Trust, the creditors and other parties in interest." (Bky. Dkt. 1686 ¶¶ g,h,k.) The Bankruptcy Court also noted in the Order that the Trustee consulted with the Liquidation Trust Committee, "which [did] not object to the Trustee's proposed allocation." (*Id*. ¶ i.) Appellants have not cited any authority requiring the Bankruptcy Court to have undergone a different analysis or based its conclusion on different factors.

Furthermore, the evidence before the Bankruptcy Court reasonably supported its conclusions. *See, e.g., Arlington LF, LLC v. Arlington Hospitality, Inc.*, 637 F.3d 706, 717 (7th Cir. 2011) (finding that a bankruptcy judge's findings "cannot be clearly erroneous" "where two permissible conclusions can be drawn.") Appellants, for example, did not provide the Bankruptcy Court with citations to any portion of the Trust Agreement or applicable law requiring the Trustee to allocate the expenses at issue. In fact, the Bankruptcy Judge specifically asked Appellants' counsel if any written agreement required the Trustee to allocate the expenses in a certain manner. (*Id.* at 12, ln. 17-18.) Appellants responded that there was no such agreement, but that they believed it was inherent in the Trustee's power to allocate proceeds. (*Id* at ln. 19-24.) Additionally, during oral argument, the Appellants informed the Bankruptcy Court that the Trustee had in fact made an allocation of certain expenses and that their "only issue" was

12

that the Trustee should have made a fair allocation of the proceeds between the Liquidation Trust and Tranche P. (Bky. Dkt. 1690 at 7, ln 11-24; 20, ln 10-12.)

Appellants also conceded to the Bankruptcy Court that they were not objecting to the "top line" of the allocation of 60% to the Liquidation Trust and 40% to Tranche P, but rather objected to the Trustee not also allocating a share of certain expenses. (*Id*. at 8, ln 5-12; at 9, ln 4-14; 12, ln 2-24.) The Trustee's counsel explained that the Trustee would have done the same amount of work regardless of Tranche P and its claims. (*Id*. at 15, ln 11-13.) In fact, one of the categories of expenses that Appellants want allocated was work the Trustee did before Tranche P even existed. Appellants counsel also conceded that the complaints filed in the Non-Estate Claims on behalf of Tranche P repeat the claims filed in the Estate Claims. (*Id*. at 22, ln 10-13.) As a result, the Bankruptcy Judge speculated that perhaps the Trustee did not think the expense allocation should be higher "because [the Trustee] [did]n't think there was any material difference or that the nonestate claims required any material or substantial difference in work." (Bky. Dkt. 1690 at 22, ln 15-22.)

Indeed, as noted by the Trustee's counsel during oral argument before the Bankruptcy Court, the Appellants did not provide any "case law or authority" requiring a trustee to reimburse a liquidation trust for the trustee's time. (*Id*. at 16, ln 11-14.) In fact, the Trust Agreement also does not require allocation of either category of expenses that trouble Appellants. *See, e.g., In re Rohlf*, No. 4464-MG, 2011 WL 3201798, 2 (Del. Ch. July 12, 2011) ("Under Title 12, Section 3303 of the Delaware Code, the responsibilities of the trustees to the settlor/beneficiary are set forth in the Trust Agreement. Accordingly, whether the trustees have satisfied or breached their fiduciary duties under the agreement is governed by the language of the [Trust Agreement]

13

itself."). Indeed, the Trustee specifically informed the Bankruptcy Court that "[n]either the Plan nor the Trust Agreement provide that any portion of the Trustee's compensation should be borne by holders of assigned claims." (Bky. Dkt. 1682 at 3.) Additionally, "[n]either the Plan nor the Trust Agreement require that expenses incurred by the bankruptcy estate prior to the existence of the Trust were to be allocated and charged against non-estate claims subsequently assigned to the Trust." (Bky. Dkt. 1682 at 3; *see also* Resp. at 13). Indeed, the Bankruptcy Judge noted that it appeared that the Appellants were making an argument for some type of claim in equity, such as unjust enrichment, rather than one based on the Trust Agreement itself or trust law. (Bky. Dkt. 1690 at 12 ln. 11-12 ("It sounds like you're trying to proceed on an unjust enrichment claim or something.").)

Finally, Appellants simply cite to no specific evidence in the record that indicates that the Trustee acted inequitably and have not offered any reason why the Court should substitute its own judgement for the reasonable, informed judgment of the Bankruptcy Judge based on the evidence before it. *See, e,g., Miller v. Herman,* No. 12 C 50251, 2012 WL 6727545, at *2 (N.D. Ill. Dec. 28, 2012) ("The finding is perfectly reasonable based on the evidence presented at the hearing and certainly do not leave the court 'with the definite and firm conviction that a mistake has been committed.'") (citing *Smith*, 582 F.3d at 777). The Appellants merely reiterate the same arguments, based on the presumption that the Trustee had an obligation to specifically allocate certain joint expenses to Tranche P prior to allocating settlements, which the Bankruptcy Court rejected. Based on the Appellants' failure to put forth any evidence undermining the Bankruptcy Court's finding, and the reasonable discretion the Trustee utilized in allocating the proceeds, the Court finds that the Bankruptcy Court did not clearly err by granting the Allocation

14

Motion.[4]

## CONCLUSION

For the foregoing reasons, the Court affirms and upholds the Bankruptcy Court's Order approving the Allocation Motion.

**DATED: March 12, 2013**

                                      **ENTERED:**

                                      **AMY J. ST. EVE**
                                      **United States District Court Judge**

---

[4] Based on this finding, the Court need not address the Trustee's *res judicata* argument, which it also raised to the Bankruptcy Court and which was not part of the Bankruptcy Court's Order. (Resp. at 14.)